[No. S175307. Nov. 4, 2010.]

THE PEOPLE, Plaintiff and Appellant, v.
FIRME HASSAN HAJJAJ, Defendant and Respondent.

**COUNSEL**

Rod Pacheco, District Attorney, Alan D. Tate and Matt Reilly, Deputy District Attorneys, for Plaintiff and Appellant.

Douglas G. Benedon, under appointment by the Supreme Court, for Defendant and Respondent.

Michael P. Judge, Public Defender (Los Angeles) and John Hamilton Scott, Deputy Public Defender, as Amici Curiae on behalf of Defendant and Respondent.

Gary Windom, Public Defender (Riverside), Joseph J. Martinez and William A. Meronek, Deputy Public Defenders, as Amici Curiae on behalf of Defendant and Respondent.

**OPINION**

**GEORGE, C. J.**—In this case, as in *People v. Engram* (2010) 50 Cal.4th 1131 [116 Cal.Rptr.3d 762, 240 P.3d 237] (*Engram*), the trial court concluded that on the last day established by Penal Code section 1382 for bringing this Riverside County criminal proceeding to trial, there were no courtrooms or judges available to try the case. Defendant objected to any further continuance

and, at his request, the court scheduled a hearing for the following day on his motion to dismiss the action. At the conclusion of that hearing, the trial court granted defendant's motion, pursuant to section 1382.[1]

On appeal, the People, represented by the district attorney, initially challenged the dismissal solely on the ground that the trial court should have transferred the case for trial to any judge assigned to a civil courtroom—the principal contention advanced in *Engram* by the district attorney and analyzed in our decision in that case.

In response to a request by the Court of Appeal for supplemental briefing, the district attorney additionally argued that the trial court's dismissal of the action was improper in light of the circumstance that at 4:15 p.m. on the last permissible day for bringing the case to trial, a courtroom and judge had become available at a branch of the Superior Court for Riverside County (hereafter Riverside Superior Court or Riverside court) located in the City of Indio, 76 miles from the main criminal courthouse in the City of Riverside, where defendant and all counsel were present awaiting assignment of the case for trial. After learning that a courtroom in Indio had become available because a trial being conducted there had just concluded, the trial court informed the parties that this development had no bearing on the merits of defendant's motion to dismiss, because it was too late in the day for defendant and his counsel to reach that distant courtroom and for the case to be brought to trial before the close of court that day.

The Court of Appeal, however, disagreed with the conclusion reached by the trial court, holding instead that under the circumstances presented by this case "the physical remoteness [of the open courtroom] constitutes good cause within the meaning of [section 1382] to commence the trial the next day at the branch court."[2] We granted review to consider the validity of this determination by the Court of Appeal.

For the reasons discussed below, we conclude the Court of Appeal's decision should be reversed. The reviewing court suggested that the trial court, in granting defendant's motion to dismiss, had "overlooked the fact that in a large and populous county like the County of Riverside, which is served by one superior court consisting of a central courthouse for criminal matters (the Riverside Hall of Justice) and various outlying branch facilities (such as the Indio court), the administration of justice and the efficient utilization of limited judicial resources may require the parties to a criminal

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Because it resolved the case in the People's favor on this ground, the Court of Appeal did not reach the question whether the case should have been assigned to a civil courtroom for trial.

proceeding to travel to a distant court facility." The record demonstrates, however, that the trial court did not overlook the possibility and propriety of requiring the parties to travel to a distant court facility; on the contrary, the trial court specifically stated that if the Indio courtroom "had been available an hour and a half prior, then . . . I would have had people on the road." The trial court's action was not based upon a reluctance to require defendant and counsel to travel to a distant courthouse, but rather upon a recognition that, because of the combination of the lateness of the hour and the time it would take for defendant and counsel to reach that courtroom, the Indio courtroom was not an "available courtroom" in which defendant could be brought to trial within the statutorily prescribed period. Moreover, contrary to the conclusion reached by the Court of Appeal, the "physical remoteness" of the Indio courtroom did not constitute "good cause" under section 1382 to delay defendant's trial. This geographical circumstance simply precluded the occurrence of one of the elements essential to the commencement of trial—namely, the physical presence of defendant and his counsel in a courtroom that is available for trial—within the period established by that statute, a situation rendering the particular courtroom, in fact, unavailable. Because, as in *Engram*, the lack of any judge or courtroom available to bring this case to trial within the statutory period resulted from chronic court congestion attributable to the state, the trial court properly concluded that good cause did not exist under section 1382 to delay defendant's trial. Accordingly, we conclude that the trial court, pursuant to section 1382, properly dismissed the proceeding.

# I

By information filed in the Riverside Superior Court on May 2, 2008, defendant Firme Hassan Hajjaj was charged with selling or transporting a controlled substance, a felony. (Health & Saf. Code, § 11379, subd. (a).) It was alleged as an enhancement that he had suffered a prior felony conviction for the same offense. (Health & Saf. Code, § 11370.2, subd. (a).) Additionally, it was alleged that the same prior conviction had resulted in a separate prison term and that defendant had reoffended within five years of the conclusion of that prior term. (§ 667.5, subd. (b).) Defendant posted bail and remained free from custody from the time he was arraigned on the complaint through the conclusion of the proceedings.

Defendant was arraigned on the information on May 6, 2008, and a trial-readiness conference was set for May 28, 2008. The clerk noted that the last permissible day for trial to commence would be July 7, 2008. At the readiness conference conducted on May 28, 2008, trial was set for June 30, 2008, and the clerk again noted that the last permissible day for trial to commence would be July 7, 2008.

On June 30, 2008, trial was trailed to July 1, 2008, and the clerk again noted that the last permissible day for trial to commence would be July 7, 2008. On the latter date, the parties announced their readiness for trial, and the matter was assigned for trial to the master calendar department, with trial set for July 10, 2008. The clerk's entry for that date indicates that counsel stipulated that the last permissible day for trial would be July 14, 2008.

On July 10, 2008, the defense moved for continuance pursuant to section 1050, because the deputy public defender representing defendant was in trial on another case. The People did not object and the court found good cause for continuance, setting a new trial date of July 16, 2008. The clerk noted the last permissible day for trial would be July 28, 2008.

On July 16, 2008, the People announced they were not ready for trial, because the deputy district attorney assigned to the case was in trial on another case. Defense counsel objected to any further delay. The court determined good cause had been demonstrated for continuance and trailed the matter to July 23, 2008, "due to courtroom unavailability." The clerk noted that the "[d]ates set are within [the] previous time waiver."

On July 23, 2008, both parties announced ready for trial but agreed to trail the matter until July 25. July 28 remained the last day for trial.

On Friday, July 25, 2008, both parties again stated their readiness for trial and announced an anticipated trial duration of three days. On its own motion, however, the trial court trailed the matter to July 28, 2008, again "due to courtroom unavailability."

On Monday, July 28, 2008, at 4:04 p.m., both sides indicated they were ready for trial, but the court announced: "The Court finds there are no available courtrooms a[t] this time." The court acknowledged that it was the last day for commencement of trial, but informed the parties[3] that "we are out of courtrooms." Defendant objected to any further delay and moved for dismissal.

During the hearing, at 4:15 p.m., the court received information that a criminal trial had just been completed in Indio at a different branch of the Riverside Superior Court (Judge Hawkins, presiding). The court previously had considered sending a case to the Indio facility, noting that it had been checking all day with court personnel at that facility, that the Indio trial judge in question had been involved in closing arguments in a murder case, and that

---

[3] In addition to defendant's case, there were four other last-day cases on the court's calendar that were in need of an open courtroom.

"it didn't look like he would open before the end of the day. Now it's 4:15 in the afternoon and he just now opened." The court added that "it takes an hour and 20 minutes [to drive there] if you were already in the car." The court stated: "I just don't think that solves anything."

Upon learning that the trial in Judge Hawkins's courtroom in Indio had concluded, the prosecutor suggested "that the court could send the case out at this point in time. There could be a DA [(deputy district attorney)] in the courtroom within the next five minutes in Judge Hawkins' court. And, so from our position, the court could send one of these cases out. We would be ready. There would be a courtroom available, provided there is a jury available."

The court disagreed with the prosecutor's position: "I don't see how it starts a trial to have a DA not prepared on it show up and say, 'I'm a DA and I'm in a courtroom,' when to start the trial, as I understand it, a jury needs to be impaneled, and at least a few questions of court voir dire have to be commenced. [¶] With the defendant not there, the defense lawyer not there, and the DA there who is not prepared, I don't see that that's the start of the trial under the law." The court concluded: "And as to whether all of this then ties up to . . . good cause for continuance . . . to go beyond the statutory periods, my understanding is that it does not."

In his motion to dismiss, defendant alleged (1) that he was not brought to trial within 10 days of the date set for trial, in violation of section 1382, subdivision (a) (section 1382(a)), and (2) that the delay constituted a violation of his state and federal constitutional rights to speedy trial. In support of the motion, his counsel submitted a declaration asserting that defendant and counsel appeared in department 63, the master calendar department, at 8:30 a.m. on July 28, 2008, and that "[t]hroughout the day both defense counsel and the prosecutor announced ready for trial."

On Tuesday, July 29, 2008, the court conducted a hearing on the motion to dismiss. The prosecutor maintained that the five pending last-day cases (including defendant's) should have been transferred to the judges assigned by the Chief Justice of California to try civil cases in Riverside County, and, with respect to the Indio court, argued that a courtroom at that facility had become "available" on July 28. The prosecutor added that, "at the very least," good cause should have been found for continuance to the following day.

In addressing the prosecutor's claim regarding the Indio courtroom, the court explained: "With respect to the courtroom that became available at 4:30 [(the court subsequently acknowledged that the time had been 4:15)] in Indio, as I understand the law, we don't start a trial by having a prosecutor appear in

Indio when the defense lawyer can't be there and the defendant can't be there, when we hear at 4:30 that a courtroom is available in Indio. It would have been highly artificial to say that the trial started just because the prosecutor assigned to the Indio office, knowing nothing about the particular trial, showed up in court and said, 'I'm a prosecutor,' and it doesn't—it's not the same as starting a trial. [¶] *So if that courtroom had been available an hour and a half prior, then, you know I would have had people on the road.*" (Italics added.)

Immediately after defendant's case was dismissed, the People refiled the felony complaint against him under a different case number (*People v. Hajjaj* (Super. Ct. Riverside County, 2008, No. SWF026125)). Defendant was arraigned on the refiled charges, and the trial court set the case for felony settlement conference as well as for preliminary hearing.

On December 8, 2008, a preliminary hearing was held on the refiled charges and defendant Hajjaj was held to answer. On February 23, 2009, however, the People elected to pursue an appeal from the dismissal of the charges involved in the proceedings now before us, in case No. SWF024102. On the People's motion, the trial court dismissed the refiled charges. The Court of Appeal subsequently reversed the judgment rendered by the trial court dismissing the original action on speedy trial grounds (No. SWF024102). We granted defendant's petition for review.

## II

The basic principles governing this case are not in dispute. The state and federal Constitutions guarantee a defendant facing criminal charges the right to a speedy trial. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) This right protects an accused from facing an unduly lengthy period in which criminal charges are pending. (*People v. Lewis* (2001) 25 Cal.4th 610, 628–629 [106 Cal.Rptr.2d 629, 22 P.3d 392] (*Lewis*).) In California, one of the principal statutes implementing the constitutional right to a speedy trial is section 1382.

Section 1382(a) provides in relevant part: "The court, *unless good cause to the contrary is shown,* shall order the action to be dismissed in the following cases: [¶] . . . [¶] (2) In a felony case, when a defendant is not *brought to trial* within 60 days of the defendant's arraignment on an indictment or information . . . . However, an action shall not be dismissed under this paragraph if either of the following circumstances exists: [¶] (A) The defendant enters a general waiver of the 60-day trial requirement. . . . [¶] (B) The defendant requests or consents to the setting of a trial date beyond the 60-day period. . . . Whenever a case is set for trial beyond the 60-day period by

request or consent, expressed or implied, of the defendant without a general waiver, the defendant shall be *brought to trial* on the date set for trial or within 10 days thereafter." (Italics added.)

 In other words, in the absence of waiver or consent on the part of the defendant, section 1382 "requires dismissal when a defendant is not 'brought to trial' within the statutorily prescribed period after the filing of the information," unless good cause is shown. (*Lewis, supra*, 25 Cal.4th at p. 629; see *People v. Johnson* (1980) 26 Cal.3d 557, 561 [162 Cal.Rptr. 431, 606 P.2d 738] (*Johnson*); see also *People v. Sutton* (2010) 48 Cal.4th 533, 545 [106 Cal.Rptr.3d 883, 227 P.3d 437] (*Sutton*).)

We first consider whether defendant could have been "brought to trial" on July 28, 2008, in the Indio courtroom under the circumstances reflected in the record. The principal case governing the question of when a case is considered to have been "brought to trial" for the purpose of section 1382 is *Rhinehart v. Municipal Court* (1984) 35 Cal.3d 772 [200 Cal.Rptr. 916, 677 P.2d 1206] (*Rhinehart*). In *Rhinehart*, the trial court calendar coordinator informed the defendant's counsel that a jury would be called and selected on November 27, but that the trial would be delayed until December 3 because of the trial court's obligations in another trial. (*Rhinehart, supra*, 35 Cal.3d at p. 775.) On Friday, November 27—the last day of the statutory 10-day grace period—the trial court confirmed its plan, that is, that the jury would be impaneled on November 27, but that trial would be delayed until December 3. The court explained that the reason this procedure would be followed was to avoid dismissal under section 1382. Over defense objection, the court proceeded with jury selection, subsequently directing the jurors to return on December 3.

In deciding whether the case had been "brought to trial" within the meaning of section 1382 by virtue of the impanelment of the jury, we acknowledged in *Rhinehart* that the phrase "brought to trial" lacked a "talismanic" meaning, but that " 'a defendant has certainly *not* been brought to trial prior to the day when the trial is scheduled and both parties appear and announce that they are ready to proceed.' " (*Rhinehart, supra*, 35 Cal.3d at p. 777.) In an effort to give meaning to the statutory phrase, our analysis turned to two appellate decisions, *People v. Amati* (1976) 63 Cal.App.3d Supp. 10 [134 Cal.Rptr. 61] (*Amati*), and *Sanchez v. Municipal Court* (1979) 97 Cal.App.3d 806 [159 Cal.Rptr. 91] (*Sanchez*).

In *Amati*, a panel of prospective jurors was sworn at 4:30 p.m. on the last permissible day for trial under section 1382, but the proceedings then were recessed until the following morning. The trial court dismissed the case because of an apparent violation of section 1382, but the superior court's

appellate department reversed. It explained that "the swearing of a panel of prospective jurors constitutes bringing a case to trial within the [then applicable] 45-day provisions of Penal Code section 1382, *so long as the panel is sworn in as a good faith start* to the jury selection process and not as a *mere device to avoid the impact of the statute*." (*Amati, supra*, 63 Cal.App.3d Supp. 10, 12, italics added, quoted with approval in *Rhinehart, supra*, 35 Cal.3d at pp. 777–778.)

In *Sanchez*, at 2:20 p.m. on the last day for trial pursuant to section 1382, the defendant's case was called for trial in a regular misdemeanor trial court, and the court presided as a jury panel was sworn and 12 prospective jurors were seated. The court then recessed the matter until the following court day because of the lateness of the hour and because the court had some " 'matters to take care of' " in other cases—including trailing another case because the attorney for the defendant in that case had been sent to trial in the *Sanchez* matter. On the following court day, a new prospective juror replaced one who needed to be excused. The court then learned that a judge assigned to hear traffic matters[4] had become available, so the case, which involved alleged Vehicle Code violations, was transferred to that judge's court for trial. In concluding that the case had been brought to trial before the first judge in a timely manner within the meaning of section 1382, the appellate court in *Sanchez* expanded upon the reference made in *Amati* to the necessity for "good faith" on the part of the trial court, stating that whether the court acted in good faith must be objectively determined. (*Sanchez, supra*, 97 Cal.App.3d at pp. 811–812.) The court held that where "the record objectively shows that a case is assigned for trial to a judge who is available to try the case and the court has committed its resources to the trial, the parties answer ready and a panel of prospective jurors is summoned and sworn, the trial process has commenced and defendant has been 'brought to trial' as that term is used in Penal Code section 1382." (*Sanchez, supra*, 97 Cal.App.3d at p. 813.) The court in *Sanchez* went on to caution, however, that it was "not rul[ing] out the possibility that in any given case subsequent events may disclose that the court was not in fact available or ready to process the case to conclusion without unnecessary delay. In such case it could then appear that the trial had not in fact commenced." (*Ibid.*)

In concluding that the circumstances of the case rendered dismissal appropriate, our decision in *Rhinehart* adopted the *Sanchez* test relating to what constitutes being "brought to trial," commenting that it "gives substance to the rights embodied in section 1382," thereby "ensur[ing] compliance with both the letter and the spirit of the statute." (*Rhinehart, supra*, 35 Cal.3d at p. 779.) In this way, we discouraged trial courts from "merely paying lip

---

[4] The original judge's court had been designated "nontraffic" and the case going to trial was a traffic matter. (*Sanchez, supra*, 97 Cal.App.3d at p. 809.)

service to the legislative mandate embodied in section 1382." (*Rhinehart, supra*, 35 Cal.3d at p. 779.) This court noted the "circumvention of section 1382" that would be invited by an alternative conclusion: "If a trial court could impanel a jury and delay a trial days or even weeks, then the statutory guarantee of a speedy trial would be rendered a nullity, and an accused's rights under section 1382 would be eviscerated." (*Rhinehart, supra*, 35 Cal.3d at p. 779.)

■ The *Rhinehart* decision concluded that past cases "compel the holding that an accused is 'brought to trial' within the meaning of section 1382 when a case has been called for trial by a judge who is normally available and ready to try the case to conclusion. The court must have committed its resources to the trial, and the parties must be ready to proceed and a panel of prospective jurors must be summoned and sworn." (*Rhinehart, supra*, 35 Cal.3d at p. 780, fns. omitted.) Applying this standard, we held that the criminal case under review had *not* been "brought to trial" on the last permissible day, because the jury was impaneled in order to avoid dismissal and the court was not "available or ready to try the case to conclusion." (*Ibid.*) Instead, the trial court intended to recess for several days so it could complete another trial.

Applying the decision in *Rhinehart* to the present case, we disagree with any argument that defendant would have been "brought to trial" on the last day of the statutory period if, at 4:15 p.m. on July 28, 2008, the trial court had assigned the case to the Indio court for trial. Although as of 4:15 p.m. a Riverside Superior Court courtroom and a judge in Indio no longer were occupied with other court proceedings, they were not available to commence defendant's trial in any meaningful sense, because defendant and his attorney (along with the assigned prosecutor) could not, before the close of business on the last day of the statutory period, travel to the distant Indio courthouse from the calendar court—where they had been required to appear and remain throughout the day on July 28 awaiting an open courtroom.

■ The *Rhinehart* decision teaches that section 1382 requires more than mere lip service to the fundamental right to a speedy trial; it requires that the elements vital to undertaking a trial be present. One of these vital elements is the presence of the parties and their counsel. In order to commence trial, the parties must be "ready to proceed" (*Rhinehart, supra*, 35 Cal.3d at p. 780); logically, a party is not ready to proceed if he or she cannot be present in the courtroom, along with counsel. Indeed, there are constitutional and related statutory provisions requiring the defendant's presence. (See *People v. Concepcion* (2008) 45 Cal.4th 77, 81 [84 Cal.Rptr.3d 418, 193 P.3d 1172] [describing defendant's state and federal constitutional rights to be present at trial in the absence of waiver or certain misconduct, along with his or her

statutory rights under §§ 977 & 1043 to be present]; see also *People v. Howze* (2001) 85 Cal.App.4th 1380, 1394–1396 [102 Cal.Rptr.2d 887] [acknowledging that a defendant has a statutory right to be present at the commencement of trial, but finding the right may be waived]; *People v. Granderson* (1998) 67 Cal.App.4th 703, 707–708 [79 Cal.Rptr.2d 268] [acknowledging that defendants have a right to be present at the commencement of trial, which is defined as occurring when the impaneling of the jury begins].)

To declare that defendant could have been "brought to trial" within the meaning of section 1382 on the last day of the statutory period under the circumstances of the present case would be to accord significance to a "mere device to avoid the impact of the statute." (*Amati, supra,* 63 Cal.App.3d at p. Supp. 12.) Through no fault of the defense, defendant and defense counsel could not be "ready to proceed" in the Indio court; there could be no " 'good faith start' " (*Rhinehart, supra,* 35 Cal.3d at pp. 777–778, italics omitted) to the proceedings. A courtroom that cannot be reached by the parties prior to the close of business is for practical and legal purposes unavailable for bringing the accused to trial. To conclude otherwise—that defendant could have been brought to trial on July 28—would endorse the view that a defendant may be brought to trial, within the meaning of the speedy trial protections of section 1382, in an *unavailable* courtroom. This result, in the understated language employed by the trial court, would be "highly artificial." Indeed, the Court of Appeal agreed with the trial court's conclusion in this respect, summarily rejecting the People's claim to the contrary.

■ We next consider the question of what constitutes "good cause" within the meaning of section 1382. If the defendant is not "brought to trial" within the statutory period, dismissal is required unless the trial court, in the exercise of its discretion, determines that *good cause* has been demonstrated. (§ 1382(a); *Sutton, supra,* 48 Cal.4th at p. 545; *Lewis, supra,* 25 Cal.4th at p. 629; *Johnson, supra,* 26 Cal.3d at pp. 561, 570.) In order to avoid dismissal, the prosecution must meet the burden of demonstrating good cause for delay. (*Rhinehart, supra,* 35 Cal.3d at p. 781.)

As we recently observed, section 1382 does not define good cause, "but numerous California appellate decisions that have reviewed good-cause determinations under this statute demonstrate that, in general, a number of factors are relevant to a determination of good cause: (1) the nature and strength of the justification for the delay, (2) the duration of the delay, and (3) the prejudice to either the defendant or the prosecution that is likely to result from the delay. [Citations.] Past decisions further establish that in making its good-cause determination, a trial court must consider all of the relevant circumstances of the particular case, 'applying principles of common sense to the totality of circumstances . . . .' [Citations.] The cases recognize that, as a

general matter, a trial court 'has broad discretion to determine whether good cause exists to grant a continuance of the trial' [citation], and that, in reviewing a trial court's good-cause determination, an appellate court applies an 'abuse of discretion' standard. [Citations.]" (*Sutton, supra*, 48 Cal.4th at p. 546, fn. omitted.)

■ Good cause within the meaning of section 1382 exists, for example, when the delay beyond the statutory period is caused by the conduct of the defendant or occurs for his or her benefit, or there are unforeseen circumstances such as unexpected illness, unanticipated unavailability of counsel, or the absence of a witness despite due diligence to secure his or her attendance. (*Johnson, supra*, 26 Cal.3d at p. 570; see *Owens v. Superior Court* (1980) 28 Cal.3d 238, 251, 253 [168 Cal.Rptr. 466, 617 P.2d 1098]; 5 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Trial, §§ 308–312, pp. 457–463.)

■ It is settled that, although a broad variety of unforeseen events may establish good cause under section 1382, the unavailability of a number of judges or courtrooms sufficient to handle the court's caseload, *due to chronic congestion* of the court's docket, does not establish good cause, absent exceptional circumstances. (*Engram, supra*, 50 Cal.4th at p. 1163; see *Stroud v. Superior Court* (2000) 23 Cal.4th 952, 969 [98 Cal.Rptr.2d 677, 4 P.3d 933].) The view we expressed 30 years ago in *Johnson, supra*, 26 Cal.3d 557, holds true today, as we confirmed in *Engram*: " 'A defendant's right to a speedy trial may be denied simply by the failure of the state to provide enough courtrooms or judges to enable defendant to come to trial within the statutory period. . . . "[U]nreasonable delay in run-of-the mill criminal cases cannot be justified by simply asserting that the public resources provided by the State's criminal-justice system are limited and that each case must await its turn." [Citation.]' " (*Engram, supra*, 50 Cal.4th at p. 1163, quoting *Johnson, supra*, 26 Cal.3d at pp. 571–572.)

It is quite evident that routine congestion was the cause of the delay in the present case. At the hearing conducted in the late afternoon of the last permissible day to bring the case to trial, the prosecutor challenged the court concerning the availability of any courtrooms or judges to try the five last-day cases then on the court's calendar, suggesting, among other examples, that the calendar court consider recalling any criminal case from a trial court if that case was not subject to dismissal for delay; assigning the last-day cases to criminal court judges handling pre-preliminary-hearing negotiated dispositions or to judges assigned to the mental health court or the drug court; or assigning the cases to civil court judges hearing probate or family court matters, or to judges hearing traffic cases. The prosecutor suggested that the court's presiding judge and pro tem judges could assume the function of criminal calendar judges, thereby freeing the latter to conduct

trials. The prosecutor asked whether the court "has done everything possible and has diverted all civil resources to criminal matters," including interrupting civil trials, and suggested the court could order one of the judges then sitting by assignment of the Chief Justice (Cal. Const., art. VI, § 6, subd. (e)) to interrupt ongoing civil trials to preside over the trial of one of the last-day cases.

The response given by the court affords striking evidence of the congestion facing the Riverside criminal courts. It explained convincingly that there were no open criminal courtrooms: "There are not, to the very best of my ability and the ability of my staff to check and recheck all day long sending e-mails and making phone calls, no, there just aren't." The court stated there were no criminal trials being tried "that have remaining time available to where they can be recalled." The court rejected the proposal that certain judges handling negotiated dispositions in criminal cases be reassigned, explaining that such functions were essential to the court system if dismissal of criminal cases on timeliness grounds was to be avoided: "[I]f a judge is settling ten cases a day or fifty a week—that's fifty times as much effect in terms of avoiding the dismissal as if he's trying a case a week."

The court continued: "And the criminal calendar courts know we're not going to take a criminal calendar court judge off in order to have him do a trial. For one thing, many of those are commissioners who can't do trials there. For another thing, all of the criminal calendar courts are resolving cases like crazy. Again, more cases would be dismissed, not less, if we were to disrupt the criminal calendar courts." The court added that it would not recall judges from vacation and that it did not believe any judges were absent for training.

The court went on: "Pro tems, to handle a calendar—we're burning out our pro tems right and left. . . . [T]hese are good people who volunteer but . . . but they don't want to volunteer all the time because their overhead is running at their office." The court added: "No, we are not going to call the P.J. [(presiding judge)] in . . . . [¶] If we don't have somebody administering [the court system], then again, it will lead to inefficiencies, which lead to more dismissals, not less."

The court noted that the Chief Justice and the Judicial Council had been informed of the situation facing the Riverside courts, adding that the court would not press into service for the last-day criminal cases those judges who had been assigned by the Chief Justice to relieve the pressure on civil departments caused by the overwhelming volume of criminal trials. The court emphasized the "human issues" involved in civil cases, including probate and family matters, as well as in traffic cases, and declined to send the last-day cases to those courts for trial.

■ Moreover, we concluded in our decision in *Engram*—which examined the very situation in which the Riverside Superior Court found itself during the period here in question—that the severe court congestion then affecting the processing of criminal cases constituted a chronic problem, attributable to the state, that did not constitute good cause within the meaning of section 1382. (*Engram, supra,* 50 Cal.4th at p. 1165.) We stated that "when the unavailability of a judge or courtroom is fairly attributable to the fault or neglect of the state, such unavailability does not constitute good cause within the meaning of section 1382." (*Engram, supra,* 50 Cal.4th at p. 1163.)

We said of the case then before us in *Engram,* as well as with reference to other cases involving the congestion in Riverside, that in each of these cases "arising out of the same general circumstances prevailing in the Riverside Superior Court during the relevant period, the trial court properly could find that the congested criminal caseload represented a chronic condition rather than an exceptional circumstance, and further that the lack of available courtrooms and judges was attributable to the Legislature's failure to provide a number of judges and courtrooms sufficient to meet the rapidly growing population in Riverside County." (*Engram, supra,* 50 Cal.4th at p. 1164.)

We concluded by pointing out: "The calendar congestion that produced the circumstance in which the numerous last-day criminal cases pending in the superior court exceeded the resources available to the court unquestionably constituted a chronic condition. It cannot properly be characterized as an 'exceptional circumstance' as that term was used in our decision in *Johnson, supra,* 26 Cal.3d 557, 571–572." (*Engram, supra,* 50 Cal.4th at p. 1165.)

The Court of Appeal in the present case acknowledged that court congestion ordinarily does not constitute good cause for delay. In the view of the appellate court, however, "the physical distance of the available and ready Indio branch courtroom from the court's location in the City of Riverside, which made it impossible for this criminal case to be brought to trial late in the afternoon of the last statutory day for trial, constituted good cause for the court to order Hajjaj, his counsel, and the prosecutor to appear in the Indio court for the commencement of trial beyond the time limit set under section 1382(a)."

The reviewing court assumed that at 4:15 p.m. on July 28, 2008, a jury panel was available and could be sworn that same day.[5] Under these assumed facts, according to the Court of Appeal, "the circumstance that both prevented Hajjaj, his defense counsel, and the prosecutor from appearing before Judge

---

[5] The record does not indicate whether or not there was a jury panel available in Indio that could be summoned and sworn for the commencement of voir dire so late in the day.

Hawkins for trial on July 28 in the available criminal courtroom at the Indio court and prevented a panel of prospective jurors from being summoned and sworn there that afternoon was the physical remoteness of the Indio court from the Riverside Hall of Justice." The court added: "We are persuaded that had Judge Hawkins's courtroom been located at the Riverside Hall of Justice, this case would have been brought to trial within the statutory time period governed by section 1382(a)."

The Court of Appeal concluded that the trial court, in a proper exercise of its discretion, should have permitted a one-day delay of the commencement of trial to permit an out-of-custody defendant, along with defense counsel and the prosecutor, to travel to the Indio courthouse. The reviewing court, asserting that defendant would not have suffered any prejudice thereby, asserted that the trial court "overlooked the fact that in a large and populous county like the County of Riverside, which is served by a superior court consisting of a central criminal courthouse (the Riverside Hall of Justice) and various outlying branch facilities (such as the Indio court), *the administration of justice and the efficient utilization of limited judicial resources* may require the parties to a criminal proceeding to travel to a distant court facility." (Italics added.)

The Court of Appeal announced as its holding: "[W]hen, on the last day of the statutorily prescribed time period for commencement of trial in a criminal case, a courtroom becomes ready and available for trial in the late afternoon at a branch court that is physically remote from the criminal calendar court at the main courthouse and that remoteness prevents the parties and counsel from appearing for trial that day, the physical remoteness constitutes good cause within the meaning of section 1382(a) to commence the trial the next day at the branch court."

We disagree with the analysis and conclusion rendered by the Court of Appeal on the issue of good cause. As we have seen, the state bears the duty of supplying judicial resources sufficient to bring defendants to trial within the statutory period. Extended distances and lengthy travel time between a court's calendar department and remote trial departments are circumstances that confront court administrators attempting to fulfill this duty. Thus geography and travel time, being constant obstacles in a large county, are conditions for which court administrators must plan. The neglect of the state in not providing resources adequate to enable the Riverside court to bring cases to trial in a timely manner in the face of these routine, consistent, predictable obstacles represents a "fault or neglect of the state." (*Engram, supra,* 50 Cal.4th at p. 1163.) This failure to account for routine and constant circumstances cannot be compared with the events ordinarily underlying a finding of good cause under section 1382, such as actions on the part of the

defendant that cause delay, or unexpected or one-time occurrences such as the sudden illness of defense counsel or failure to appear by a witness who has been subpoenaed to testify. (See *Johnson, supra,* 26 Cal.3d at p. 570.) The logistical difficulty that occurred in the present case was not brought about by any failure on the part of defendant to allocate sufficient time in which to reach a distant assigned court. Instead, it was physically *impossible* for defendant to travel from the calendar court, where he was required to appear, to the remote courtroom and judge characterized by the district attorney as "available," in time to commence the trial in a timely fashion.

That it was chronic court congestion that caused the problem can be seen from the colloquy that took place between the trial court and the prosecutor concerning the court's fruitless efforts to identify a single open courtroom, and the prosecutor's suggestion that civil trials should come to a halt in order to avoid dismissals of the five last-day cases. The congestion that prevailed into the last hour of the last day for trial—a condition without which the court would not have needed to consider the efficacy of sending defendant's case to the remote courthouse location—did not constitute good cause for exceeding the statutorily prescribed period for trial.

We are unaware of any authority supporting the proposition that the geographical distance between court facilities and the extended travel time required to reach them constitute good cause within the meaning of section 1382, especially when the need to resort to a distant court is caused by chronic court congestion.

 In support of our own conclusion, however, we have identified one case bearing some resemblance to the current matter, where neglect attributable to the state's heavy burdens related to the administration of justice prevented the defendant from being present in court in a timely manner. In *Jackson v. Superior Court* (1991) 230 Cal.App.3d 1391 [281 Cal.Rptr. 545] (*Jackson*), the last day for trial under section 1382 was February 11. The defendant was not present when the case was called, however, because the sheriff failed to transport the in-custody defendant to court until after the trial court's 9:30 a.m. deadline, following which the trial court continued the matter due to the defendant's nonappearance. The lower court viewed the sheriff's failure to transport the defendant to court in time to meet the trial court's deadline as good cause within the meaning of section 1382, but the Court of Appeal disagreed. The court observed that the right to speedy trial "cannot be stifled by procrastination or neglect by public officials." (*Jackson, supra,* 230 Cal.App.3d at p. 1393.) Although the People pointed to the logistical difficulties faced by the Los Angeles County Sheriff's Department in daily transporting approximately 2,000 inmates to court appearances throughout a large and populous county, the Court of Appeal responded: "The

risk of delay caused by those charged with official action rests with [the] People, not the defendant." (*Id.* at p. 1394.)

 As suggested by the court in *Jackson, supra,* 230 Cal.App.3d 1391, it is the state's obligation to resolve the routine logistical difficulties it faces in bringing defendants to trial in a timely manner. As has been stated, distance and travel time between calendar courts and trial courts are routine matters that must be taken into account by the state in fulfilling its duties. In the present case, had the state committed sufficient resources to criminal trials in Riverside County, it would have provided a courtroom in which defendant *actually* could be brought to trial within the statutory period; it would not have been necessary to rely upon a proposal to transfer the present case to a distant courthouse at 4:15 p.m. on the last permissible day for trial. The circumstance that a single courtroom and judge became available late in the afternoon of the last day for trial *somewhere* in the expansive geographical area served by the Riverside County Superior Court does not constitute "good cause" under section 1382 to delay defendant's trial beyond the presumptive statutory period.[6]

Nor, contrary to the suggestion of the Court of Appeal, was the trial court required to find good cause for continuance because a courtroom would be open on the day following the expiration of the statutory period. Such a rule would undermine the periods prescribed by the Legislature to provide substance to the defendant's right to a speedy trial—at least in geographically expansive counties.

Although the Court of Appeal essentially ignored court congestion as the cause of the delay, the People—in a slight modification of the Court of Appeal's analysis—contend that, even under circumstances of chronic court congestion, "if there is an available courtroom on the statutory last day, then a defendant can be '*brought to trial.*' However, if the parties cannot reach the courtroom due to 'physical remoteness,' then that is an 'exceptional circumstance' establishing good cause for a continuance under section 1050." (Italics added.)

 We cannot agree that distance and ordinary travel time between two courts in which a defendant is required to appear constitute "exceptional circumstances" within the meaning of our case law, any more than they

---

[6] The conclusion reached by the Court of Appeal does not find support in the circumstance that "had Judge Hawkins's courtroom [in Indio] been located at the Riverside Hall of Justice, this case would have been brought to trial within the statutory time period governed by section 1382(a)." Judge Hawkins's court was *not* located in the City of Riverside, and because of the distance between Riverside and the Indio courtroom, his courtroom simply was not available to bring defendant to trial on July 28.

constitute good cause. Distance and ordinary travel time are quite distinct from the kind of extraordinary, unanticipated, nonrecurring events, discussed in *Johnson, supra,* 26 Cal.3d 557, that may constitute "exceptional circumstances" excusing delay caused by court congestion. In that decision, we cited a discussion appearing in the American Bar Association standards for speedy trial: " 'Although it is fair to expect the state to provide the machinery needed to dispose of the usual business of the courts promptly, it does not appear feasible to impose the same requirements when certain *unique, nonrecurring events* have produced an inordinate number of cases for court disposition.' " (*Johnson, supra,* 26 Cal.3d at p. 571, italics added, quoting ABA Project on Standards for Crim. Justice, Stds. Relating to Speedy Trial (Approved Draft 1968) pp. 27–28 (ABA Standards).) For example, such " 'unique, nonrecurring events' " might include " 'a large-scale riot or other mass public disorder' " resulting in " 'an inordinate number of cases' " that are simultaneously scheduled for trial. (*Engram, supra,* 50 Cal.4th at pp. 1163–1164, fn. 12, quoting ABA Standards, p. 28.) A similar understanding of the kind of exceptional circumstances needed to justify delay under section 1382 is found in Government Code section 68115, subdivision (h), a provision that permits extension of the time provided for trial in Penal Code section 1382 "[w]hen war, insurrection, pestilence, or other public calamity, or the danger thereof, or the destruction of or danger to the building appointed for holding the court, renders it necessary, or when a large influx of criminal cases resulting from a large number of arrests within a short period of time threatens the orderly operation of a superior court . . . ." (Gov. Code, § 68115.) Although other unanticipated but less calamitous circumstances *may* be designated as "exceptional" under the circumstances of a particular case, a constant feature—such as the distance and ordinary travel time between two courthouses in which the defendant is required to appear—cannot qualify.

In addition, as the People conceded at oral argument, their rationale would permit disparate application of section 1382 depending upon the size of the county in which the defendant's trial was proceeding. In a small county, defendants would have the benefit of the speedy trial period specified by the statute, whereas defendants in Riverside and other large counties would be subject to having the period extended by an additional day to accommodate travel time.

In sum, we are not persuaded by the People's circular argument that, because a trial court was not *actually* available to bring defendant to trial until one day following the conclusion of the statutorily prescribed period, due to *routine* court congestion, *exceptional* circumstances existed justifying a one-day delay. To adopt the People's position would permit chronic court congestion and institutional shortcomings, such as those we refused to condone in *Engram, supra,* 50 Cal.4th 1131, to serve—in certain counties—to extend routinely the periods specified by the Legislature in section 1382.

## III

For the reasons discussed above, the judgment rendered by the Court of Appeal is reversed.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.