Filed 1/19/17

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| THE PEOPLE, | |
|     Petitioner, | E067296 |
| v. | (Super.Ct.No. RIF1601012) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
|     Respondent; | |
| PABLO ULLISSES LARA, JR., | |
|     Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate/prohibition. Richard T. Fields, Judge. Petition denied.

Michael A. Hestrin, District Attorney, Donald W. Ostertag, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Steven S. Mitchell; Steven L. Harmon, Public Defender, Laura Arnold, Deputy Public Defender, for Real Party in Interest.

Having read and considered the petition, the informal response, and petitioner's reply, as well as the record provided by both parties, we conclude the petition lacks merit. Our order requesting an informal response notified real party in interest that a peremptory writ might issue unless it showed good cause to the contrary. All parties received "due notice" (Code Civ. Proc., § 1088), and "it appears that the petition and opposing papers on file adequately address the issues raised by the petition, that no factual dispute exists, and that the additional briefing that would follow issuance of an alternative writ is unnecessary to disposition of the petition." (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178.) In reliance on these rules, and because we agree that the issue posed by the petition is an important one warranting speedy resolution, we now resolve the petition by way of a formal written opinion denying relief. (*Frisk v. Superior Court* (2011) 200 Cal.App.4th 402, 414-417 [such procedure creates a " 'cause' " and the resulting opinion constitutes law of the case].)

FACTUAL AND PROCEDURAL BACKGROUND

On March 2, 2016, petitioner (the People) initiated a prosecution against real party in interest, a minor who was detained at juvenile hall, by directly filing a criminal complaint against him in adult court[1] under the authority of former section 707, subdivision (d)(2), of the Welfare and Institutions Code. A preliminary hearing occurred on May 26, 2016, and on June 10, 2016, the People filed an information charging real

---

[1] The statutory phrase is "a court of criminal jurisdiction." (See, e.g., Welf. & Inst. Code, § 707, subd. (a).) As do the People and as did the voter pamphlet supporting Proposition 57, we tend to use the vernacular, "adult court." We do this for ease of reference and mean no disrespect.

party in interest with felony violations of Penal Code sections 209, subdivision (b)(1), 286, subdivision (c)(2)(B), and 288a, subdivision (c)(2)(B).

On November 8, 2016, the voters passed Proposition 57.[2]  As relevant to this petition, Proposition 57 eliminated the People's ability to directly file charges against a juvenile offender in adult court and instead authorized the People to file "a motion to transfer the minor from juvenile court to a court of criminal jurisdiction."  (Welf. & Inst. Code, § 707, subd. (a)(1).)  Upon receiving such a motion, the juvenile court is to decide whether the minor should be transferred to adult court based on statutorily-prescribed factors.  (Welf. & Inst. Code, § 707, subd. (a)(2).)

On November 16, 2016, real party in interest filed a motion requesting "a fitness hearing in juvenile court pursuant to recently enacted legislation via Proposition 57." After considering written opposition from the People, who argued Proposition 57 could not be applied to real party in interest's case retroactively, the trial court granted the motion on November 29, 2016.  The People's petition followed.

## DISCUSSION

The People contend the trial court misapplied the law when it held that Proposition 57 could be applied to cases that were directly filed against juvenile offenders in adult court before the new law took effect.  Because we disagree that applying Proposition 57

---

[2]  This enactment is also known as The Public Safety and Rehabilitation Act of 2016.  For ease of reference, we shall refer to it as "Proposition 57" in this opinion. Moreover, when we use the term "Proposition 57" in the course of this opinion, we refer, unless otherwise specified, only to those portions of the enactment that are relevant to this petition, namely, the portions of Proposition 57 that eliminated the People's ability to initiate criminal cases against juvenile offenders anywhere but in the juvenile court.

to require a juvenile court judge to assess whether real party in interest will go to trial in adult or juvenile court constitutes a retroactive application of the new law, we deny the petition.

We agree with the People in part: changes in the law ordinarily apply prospectively but not retroactively. (See, e.g., Pen. Code, § 3.) "It is well settled that a new statute is presumed to operate prospectively absent an express declaration of retrospectivity or a clear indication that the electorate, or the Legislature, intended otherwise." (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287 (*Tapia*).)

We also agree with the petition that *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), the case that spawned a well-known exception to the default rule of prospectivity, does not apply here. After all, *Estrada* does no more than "inform[] the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments." (*People v. Brown* (2012) 54 Cal.4th 314, 324.) Real party in interest does not argue that, and we therefore do not consider whether, Proposition 57 amounts to a legislative reduction in the punishment for a crime.

Where we part ways with the People is in defining what sorts of applications of a new law will actually count as "retroactive" in the sense we have been discussing. After all, "[a] statute does not operate retroactively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment." (*Kizer v. Hanna* (1989) 48 Cal.3d 1, 7-8.)

4

The *Tapia* court, considering whether a voter initiative that changed who (the judge rather than counsel) and under what circumstances (only in conjunction with challenges for cause) jurors would be examined during voir dire, described how this understanding of retroactivity intersects with changes to the procedural rules governing criminal trials. Rejecting a contention that the rule changes required by the voter initiative could only apply to prosecutions for crimes committed after the effective date of the new law, the court explained: "Even though applied to the prosecution of a crime committed before the law's effective date, a law addressing the conduct of trials still addresses conduct in the future. This is a principle that courts in this state have consistently recognized. Such a statute ' "is not made retroactive merely because it draws upon facts existing prior to its enactment . . . . [Instead,] [t]he effect of such statutes is actually prospective in nature since they relate to the procedure to be followed in the future." ' [Citations.] For this reason, we have said that 'it is a misnomer to designate [such statutes] as having retrospective effect.' " (*Tapia*, *supra*, 53 Cal.3d at p. 288.) Thus, "a law governing the conduct of trials is being applied 'prospectively' when it is applied to a trial occurring after the law's effective date, regardless of when the underlying crime was committed." (*Id.* at p. 289.)

The legislative changes at issue in this petition fit easily into this framework. Requiring a juvenile judge to assess whether real party in interest is tried in adult court strikes us as a "law governing the conduct of trials." (*Tapia*, *supra*, 53 Cal.3d at p. 289.) Because Proposition 57 can only apply to trials that have yet to occur, it can only be applied prospectively.

5

Arguing we should not apply this definition from *Tapia* to the facts of this case, the People seize on the following language from *People v. Grant* (1999) 20 Cal.4th 150, 157 (*Grant*): "In general, application of a law is retroactive only if it attaches new legal consequences to, or increases a party's liability for, an event, transaction, or conduct that was *completed* before the law's effective date. [Citations.] Thus, the critical question for determining retroactivity usually is whether the last act or event necessary to trigger application of the statute occurred before or after the statute's effective date." From this, the People reason that "Proposition 57's procedural changes can only be applied to 'new' and 'future' proceedings [citation] and cannot be applied to procedural aspects that have already taken place, such as the previous direct-filing of a case in the superior court or the conduct of a previously-held fitness hearing."

We see the matter differently. Although real party in interest is now under the jurisdiction of the juvenile court, the People may move to have him transferred to adult court if they think he meets the criteria for trial there. (Welf. & Inst., § 707, subd. (a).) Even assuming the decision to directly file a complaint against real party in interest in adult court is in fact the last act before Proposition 57 can be applied, the People's position fails because they have not identified how asking them to get the juvenile court's permission before proceeding to a final adjudication in adult court "attaches new legal consequences to, or increases a party's liability for, an event, transaction, or conduct that was *completed* before the law's effective date." (*Grant*, *supra*, 20 Cal.4th at p. 157.)

For comparison, we look to *Strauch v. Superior Court* (1980) 107 Cal.Ap.3d 45, 49 (*Strauch*), which the *Tapia* court cited with approval. (*Tapia*, *supra*, 53 Cal.3d at

6

p. 289.)  The real party in interest there filed a medical malpractice complaint against the petitioner.  (*Strauch*, at p. 47.)  The petitioner moved to strike the complaint because, when the complaint was filed, Code of Civil Procedure section 411.30 provided that "no complaint [for medical malpractice] shall be accepted for filing unless it is accompanied by" a certificate of merit, and no certificate had been filed.  (*Strauch*, at pp. 47-48.)  The trial court denied the motion, granted the real party in interest relief under Code of Civil Procedure section 473, and allowed the late filing of a certificate of merit.  (*Strauch*, at p. 47.)  After that ruling, the Legislature amended Code of Civil Procedure section 411.30 to specify that the certificate of merit did not need to be filed until the date of service of the complaint, and that the defect was only subject to demurrer.  (*Strauch*, at p. 48.)  On writ review of the order denying the motion to strike, the court held it was appropriate to apply the amended statute in support of the trial court's order because the law was procedural, only, and applying it would "not create a new cause of action or deprive a malpractice defendant of any defense on the merits or affect vested rights."  (*Id.* at p. 49.)

In *Strauch*, as here, a statute created a right (the right to dismissal absent a certificate of merit in *Strauch*, and the right to directly prosecute a juvenile in adult court here) that was later abrogated by legislative amendment.  The petitioner in *Strauch* fought to keep that right, just as the People here do.  In each case, however, the petition fails to show how the legislative change affects "vested rights."  (*Strauch*, *supra*, 107 Cal.App.3d at p. 49; cf. *Aetna Casualty & Surety Co. v. Industrial Accident Com.* (1947) 30 Cal.2d 388 (*Aetna Casualty*) [new law allowing increased recovery from the Industrial Accident Commission could not be applied to claimants whose injuries arose before the

7

new law's effective date because the increased compensation due by the claimants' employers was a substantive rather than procedural change]; *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188 [Proposition 51, which rejected traditional joint and several liability on tort claims in favor of liability that is proportionate to fault, could not be applied retroactively to causes of action that arose prior to the law's effective date because it decreased the amount of recovery a plaintiff could reasonably obtain].) Having to file a motion to get the juvenile court's permission to try a minor in adult court does not strike us as the sort of changed legal consequences the *Grant*, *Strauch*, and *Tapia* courts had in mind.

Perhaps more to the point, we disagree with the People that the act of directly filing a case against a juvenile offender in adult court without the permission of the juvenile court is the last act prior to application of Proposition 57. For this portion of our analysis, we look to the materials in support of Proposition 57. (See, e.g., *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 901 [official ballot pamphlet useful in interpreting voter initiatives].)

As both parties have noted, the ballot pamphlet supporting Proposition 57 contains two express purposes related to juvenile offenders: "Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles"; and "Require a judge, not a prosecutor, to decide whether juveniles should be tried in adult court." (Ballot Pamp., Gen. Elec. (Nov. 8, 2016) text of Prop. 57, p. 141, Public Safety and Rehabilitation Act of 2016, § 2.) In addition, the legislative analysis supporting Proposition 57 went so far as to state: "the only way a youth could be tried in adult court is if the juvenile court

8

judge in the hearing [under Welfare and Institutions Code section 707, subdivision (a)]] decides to transfer the youth to adult court." (Ballot Pamp., Gen. Elec. (Nov. 8, 2016), analysis by legislative analyst, p. 56.)

A juvenile offender is not "tried in adult court" merely because the People have filed a complaint against him or her there. Rather, "past cases 'compel the holding that an accused is "brought to trial" . . . when a case has been called for trial by a judge who is normally available and ready to try the case to conclusion. The court must have committed its resources to the trial, and the parties must be ready to proceed and a panel of prospective jurors must be summoned and sworn.' " (*People v. Hajjaj* (2010) 50 Cal.4th 1184, 1196 [analyzing when a case is brought to trial for purposes of Penal Code section 1382, which requires dismissal if certain speedy trial deadlines are not met].) The People have not shown, nor can they show, that real party in interest has participated in a proceeding in adult court that meets these criteria. They have therefore not shown that the harm Proposition 57's ballot pamphlet said the new law would prevent, namely, trial of a juvenile in adult court without the permission of a juvenile judge, has occurred. As we see it, this means the People have not shown that the last act precedent to application of Proposition 57 has already happened, such that requiring a juvenile judge to assess whether real party in interest will be brought to trial in adult court would be applying Proposition 57 retroactively.

Finally, the People argue some temporal qualifiers in the materials supporting Proposition 57, combined with the initiative's relative silence regarding retroactivity, evidence an intent on the part of the voters to only have the initiative's new rules applied

9

to cases filed after its passage. "Specifically, [they contend,] the legislative analysis provided to the voters in the ballot pamphlet includes the stated intent of ensuring that minors 'accused of committing certain severe crimes would *no longer* automatically be tried in adult court' and that a judge would need to make a determination '*before* youths can be transferred to adult court.' (Ballot Pamp., Gen. Elec. (Nov. 8, 2016) analysis by the legislative analyst, p. 56, emphasis added.)" We are unconvinced that the italicized adverbs above imply anything about retroactivity. In fact, this phrasing seems more like an indication that the voters intended Proposition 57's provisions regarding juveniles to be applied immediately; otherwise, it would be untrue that minors are "no longer" automatically tried in adult court, and that a juvenile judge must grant a motion to transfer "before" a trial in adult court can occur.

Unlike the People, we make nothing of the fact that portions of Proposition 57 other than those at issue here, or for that matter other, similar initiatives, mention retroactivity while the portion of Proposition 57 that affect juvenile offenders do not. The *Tapia* court was quite clear that the initiative under consideration there was "entirely silent on the question of retrospectivity," and yet it applied the new law anyway. (*Tapia*, *supra*, 53 Cal.3d at p. 287.) In cases like this, " 'the statutory changes are said to apply not because they constitute an exception to the general rule of statutory construction [i.e., the presumption of prospectivity], but because they are not in fact retroactive. There is then no problem as to whether the Legislature intended the changes to operate retroactively.' " (*Tapia*, at p. 290, quoting *Aetna Casualty*, *supra*, 30 Cal.2d at p. 394.)

10

Moreover, "We must assume that [the] voters knew about and followed *Tapia*." (*John L. v. Superior Court* (2004) 33 Cal.4th 158, 171.)  Because we do precisely this, and because we conclude that Proposition 57 is being applied prospectively in this case, it is of no moment that Proposition 57 does not explicitly address retroactivity.

We publish today's opinion because we recognize that trial courts may need guidance deciding whether and how to apply Proposition 57 to cases that were directly filed in adult court before its passage.  We caution that we need not and therefore do not opine about anything other than the retroactivity of the portion of Proposition 57 that requires the juvenile court to permit trial of a minor in an adult criminal court.  We do not address the equal protection argument real party in interest advanced in his informal response.  (*People v. Pantoja* (2004) 122 Cal.App.4th 1, 10 [court must avoid reaching constitutional issues if case can be resolved on statutory ground].)  In addition, although the People asked for advice about how courts should handle direct-filed cases that are transferred to juvenile court and then back to adult court after a successful motion under Welfare and Institutions Code section 707, subdivision (a), we do not purport to guide trial courts regarding other procedural aspects of cases against juveniles now that Proposition 57 has passed.  Any such issues are best left for cases that squarely present them.

DISPOSITION

The petition is denied.

CERTIFIED FOR PUBLICATION

RAMIREZ
P. J.

We concur:

McKINSTER
J.

SLOUGH
J.