Filed 5/21/21  P. v. Moreno CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JESSE GARCIA MORENO,<br><br>    Defendant and Appellant. | F077381<br><br>(Super. Ct. No. F15905574)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan B. Conklin, Judge.

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Matthew Rodriquez, Acting Attorney General, Gerald A. Engler and Lance E. Winters, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Defendant Jesse Garcia Moreno was charged with 35 felony offenses arising from his molestation of his daughter from the ages of 11 to 17. Defendant was convicted by jury on all counts, as follows: two counts of committing a lewd or lascivious act on a child under 14 years of age (Pen. Code, § 288, subd. (a); counts 1–2),[1] two counts of aggravated sexual assault of a child under 14 years of age and seven or more years younger (§ 269, subd. (a)(4); counts 3–4), 12 counts of forcible oral copulation on a minor 14 years or older (former § 288a, subd. (c)(2)(C); counts 5–16),[2] 11 counts of oral copulation by means of intoxication (former § 288a, subd. (i); counts 17–18, 20–23, 27–30 & 33), four counts of rape by means of intoxication (§ 261, subd. (a)(3); counts 19, 24, 31 & 32); two counts of sexual penetration by means of intoxication (§ 289, subd. (e); counts 25 & 34), one count of attempted sodomy by means of intoxication (§§ 664/286, subd. (i); count 26), and one count of using a minor for sex acts (§ 311.4, subd. (c); count 35).

The trial court sentenced defendant to a total determinate term of 159 years and a total indeterminate term of 30 years to life, for an aggregate prison term of 189 years to life in prison.[3] In addition, the trial court imposed the maximum restitution fine of

---

[1]   All further statutory references are to the Penal Code unless otherwise stated.

[2]   Section 288a was renumbered to section 287 effective January 1, 2019. (Stats. 2018, ch. 423, § 49, pp. 88–91.)

[3]   Defendant was resentenced several weeks after the original sentencing hearing to correct an error on counts 17 and 18. His aggregate prison term was calculated as follows: consecutive eight-year terms on counts 5–16, 19 , 24, 31, and 32, pursuant to section 667.6, subdivision (d); consecutive two-year terms on counts 1, 2, 17, 18, 20–23, 25, 27–30, 33, and 34; a concurrent one-year term on count 35; and consecutive, mandatory terms of 15 years to life on counts 3 and 4. We note the probation report incorrectly reflects a sentencing triad of three, six, or eight years for forcible oral copulation under former section 288a, subdivision (c)(2)(C), rather than the correct sentencing triad of six, eight, or ten years. As a result of the error, the trial court sentenced defendant to the middle term of eight years on counts 5–16, although it intended the aggravated term. The error did not result in an unauthorized sentence (*People v. Olken* (1981)

$10,000 under section 1202.4, subdivision (b)(1); a parole revocation restitution fine of $10,000 under section 1202.45, subdivision (a), suspended; and a $300 fine under section 290.3 for the commission of specified sex offenses.[4]  Further, the probation report and minute order correctly reflect a total court operations assessment of $1,400 under section 1465.8 and a total court facilities assessment of $1,050 under Government Code section 70373, but the court mispronounced the assessments as "courtroom securities of $70 per count for a total of $1,050."

On appeal, defendant claims that his statutory and constitutional rights to a speedy preliminary hearing and trial were violated following withdrawal of his time waivers, entitling him to dismissal.  He also claims that based on the video clips entered into evidence, his convictions on count 5 for forcible oral copulation and counts 17–34 for various sex offenses committed by means of intoxication are not supported by substantial evidence; and that the trial court erred in allowing a detective to opine that the victim was intoxicated in some of the videos that corresponded with counts 17–34.  Finally, pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), defendant claims he is entitled to remand for an ability-to-pay hearing on the fines and court assessments imposed.

In supplemental briefing ordered pursuant to Government Code section 68081, the People concede that defendant's conviction on count 5 is not supported by substantial evidence of oral copulation.  They also concede that the trial court may not impose court operations and facilities assessments if a defendant lacks the ability to pay.  However, they contend defendant forfeited his *Dueñas* claim by failing to object and with the

---

125 Cal.App.3d 1064, 1067) and, therefore, we shall order correction of the abstract of judgment to reflect imposition of the middle term (*People v. Mitchell* (2001) 26 Cal.4th 181, 185).

**4**    The abstract of judgment does not include the $300 fine under section 290.3 and we shall order its inclusion.  (*People v. High* (2004) 119 Cal.App.4th 1192, 1200 ["All fines and fees must be set forth in the abstract of judgment."].)

exception of the aforementioned concessions, they dispute defendant's entitlement to relief on his claims.

We accept the People's concession on count 5 and reverse defendant's conviction as unsupported by substantial evidence, which reduces defendant's determinate term by eight years and results in an aggregate term to 151 years to life in prison. However, we reject defendant's substantial evidence challenge to his convictions on counts 17–34, and his challenge to the admission of the detective's testimony that the victim appeared intoxicated in some of the video clips. We also conclude that defendant forfeited his *Dueñas* claim in its entirety by failing to object to the $10,000 restitution fine.

Finally, on our own motion and given the reversal of count 5, we modify the judgment to reflect imposition of a total court operations assessment of $1,360 under Penal Code section 1465.8 and a total court facilities assessment of $1,020 under Government Code section 70373. (Pen. Code, § 1260; *People v. Rodriguez* (2012) 207 Cal.App.4th 1540, 1543, fn. 2; *People v. Guiffre* (2008) 167 Cal.App.4th 430, 434–435.) We also order correction of the abstract of judgment to reflect imposition of a $300 fine under Penal Code section 290.3 (*People v. High*, *supra*, 119 Cal.App.4th at p. 1200), and imposition of the middle term of eight years on counts 6–16 (*People v. Mitchell*, s*upra*, 26 Cal.4th at p. 185). Except as modified, the judgment is affirmed.

## FACTUAL SUMMARY

Defendant and A.M. had one child together, S.M. Their relationship ended when S.M. was four or five years old, and S.M. visited defendant most weekends. When S.M. was 11 years old, defendant began talking to her about sex. He exposed his penis to her, showed her pornography and demonstrated how to put on a condom. He told her he wanted to teach her "how to be a good girlfriend," by which he meant knowing how to perform oral sex.

The first instance of abuse S.M. recalled was defendant putting his mouth on her vagina and asking her to touch his penis. She was 11 or 12 years old. She did not recall

4.

when defendant first had her orally copulate his penis, but she testified he told her that boys would like her if she knew how to do it. Although it was all "a blur," she stated that something sexual in nature occurred every time she visited him over the six-year period between the ages of 11 and 17 years old.

S.M. did not see defendant every weekend, but during middle school and into the beginning of high school prior to when she turned 14, her visits involved sexual touching and oral copulation. Defendant told S.M. he had a medical condition that caused him to be unable to urinate and if she did not help him urinate by orally copulating him, he would have to go to the hospital.

When S.M. was 14 or 15 years old, defendant began making her eat chocolate covered strawberries that tasted like alcohol and drink alcohol mixed with red punch afterward. S.M. could see "very small" "black pebbles" in the drink that looked like a black powder to her. Defendant told her the strawberries would make her pass out and the alcohol would keep her awake. S.M. testified that the drink made her dizzy and confused, and it caused her to have complete memory loss.

Defendant began engaging in sexual intercourse with S.M. when she was 16 years old. She recalled one incident when defendant made her ingest the drink and she woke up the next morning wearing only a long T-shirt that did not belong to her. She recalled telling defendant she did not want to have sex with him and then waking up with him on top of her. She began to cry, and he told her not to cry. When she woke up the next morning, she felt ill, her vagina and lower abdomen were very sore, and her pubic hair had been shaved off. She had no memory of what happened other than when she woke to defendant on top of her and started to cry, but defendant told her they had had intercourse that night and asked if she was "'okay down there.'"

S.M. testified that defendant had a camera he would hold in the bathroom. She would tell him to stop, and he would tell her it was not on and put it down on the counter.

5.

He always picked it back up again, though, and she knew he recorded their sexual acts because he would later watch the recordings on the television.

When S.M. was 17 years old, she disclosed the abuse to a friend and then to her mother, who reported it to police. S.M. thereafter made two recorded phone calls to defendant, which were played for the jury. Defendant did not deny the crimes; he denied having bad intentions and stated he "apologize[d] for everything that … [she felt] was not right" and for "bring[ing] [her] into something that … [she was] not ready for .…"

When police executed the search warrant, they located 107 pornographic videos of defendant and S.M., along with still images that lacked any identifying information.[5] They also located red punch; Smirnoff vodka, which S.M. said defendant sometimes poured in her drinks; and chocolate covered strawberries in the refrigerator. They did not locate any black powder, however, and did not confiscate or test the strawberries.

## DISCUSSION

I.     **Violation of Speedy Trial Rights**

    A.     **Preliminary Hearing**

        1.     **Procedural Background**

Defendant was arrested for the crimes in this case in May 2012. Relevant to his speedy trial claim, the criminal complaint against him was dismissed and refiled on September 9, 2015, and he was arraigned and entered a plea of not guilty. On September 14, 2015, defendant entered a general time waiver and his counsel of record, Mr. Kinney, moved to withdraw from the case.

On October 28, 2015, Mr. Quade, who had been appointed to represent defendant, notified the court that his office had declared a conflict and Mr. Lamanuzzi was to be appointed, but he was specially appearing on Mr. Lamanuzzi's behalf. During the

---

[5]     Counts 5–34 are based on separate video clips located by law enforcement, spanning between April 2, 2010, when S.M. was 15 years old, and January 28, 2012, when S.M. was 17 years old.

hearing, defendant personally revoked his general time waiver and invoked his speedy trial rights. The court noted a timeout date of December 28, 2015, and set the matter for a pre-preliminary hearing on November 18, 2015, and a preliminary hearing on November 30, 2015.[6]

On November 18, 2015, Mr. Quade made a special appearance on behalf of Mr. Green, who was then defendant's counsel of record. The matter was confirmed for preliminary hearing on November 30, 2015.

On November 30, 2015, Mr. Lindahl, who was representing defendant, declared a conflict and notified the court that Mr. Sok would be representing defendant. The court noted the timeout date of December 28, 2015, assuming a 60-day clock, and continued the preliminary hearing to December 14, 2015.

On Monday, December 14, 2015, Mr. Renge appeared on behalf of defendant. He represented that Friday afternoon, he accepted the appointment upon receipt of a call from the court administrator, but he was not notified that the case timed out on December 28, 2015. Mr. Renge stated that he was willing to take the case but, based on the voluminous amount of discovery, he would not be prepared to proceed in time if defendant wished to exercise his right to a speedy preliminary hearing. After finding it constituted a reasonable amount of time to allow Mr. Renge to prepare, the court continued the preliminary hearing to January 13, 2016, over defendant's objection.

On January 13, 2016, the parties appeared and were ready for the preliminary hearing. However, Mr. Renge was scheduled to deliver a closing argument in another courtroom that afternoon. He informed the court that defendant objected to any continuances. The trial court found good cause to trail the matter one day due to

---

[6] Defendants states he was entitled to a preliminary hearing no later than December 27, 2015, but that day fell on a Sunday. (Cal. Rules of Court, rule 1.10(b).)

7.

Mr. Renge's unavailability, and the preliminary hearing commenced on January 14, 2016.

On the second day of the preliminary hearing, January 19, 2016, defendant made a motion to substitute new counsel, which was denied after an in camera hearing. (*People v. Marsden* (1970) 2 Cal.3d 118, 123–124.) Defendant then made a motion to represent himself, which the court granted. (*Faretta v. California* (1975) 422 U.S. 806, 819–821 (*Faretta*).) At the conclusion of the preliminary hearing, defendant was held to answer on all counts.

On May 31, 2016, defendant, by then represented by Mr. Bijev, filed a motion to dismiss the information based on violation of the 60-day deadline in section 859b. The trial court denied the motion on June 22, 2016, stating that the statute does not provide for withdrawal of a waiver; on constitutional grounds, any prejudice to defendant must be balanced against the justification for the delay; and defendant had been through "a succession of attorneys who subsequently declared conflicts."

Now before us on appeal, defendant claims that pursuant to section 859b, he is entitled to dismissal under section 1387 because the trial court failed to hold his preliminary hearing within 60 days of the revocation of his general time waiver, and the court erred when it read a good cause or reasonable time exception into the 60-day rule. He also claims that the court later erred when it denied his motion for dismissal based on the violation of the time constraints set forth in section 859b. The People contend, without citation to relevant authority, that, assuming the 60-day timeout date for the preliminary hearing was December 28, 2015, the trial court properly found good cause to hold the hearing within a reasonable time after that date. They also contend that defendant failed to show prejudice arising from the delay.

As discussed next, the statutory 60-day rule does not include a good cause exception. (E.g., *Favor v. Superior Court* (2021) 59 Cal.App.5th 984, 992 (*Favor*).) However, assuming without deciding that defendant's withdrawal of his general time

8.

waiver had the effect of triggering the 60-day deadline under section 859b, where defendant's statutory right to a preliminary hearing within 60 days directly conflicted with his constitutional right to effective assistance of counsel, his statutory right must yield. (*People v. Kowalski* (1987) 196 Cal.App.3d 174, 179 (*Kowalski*).)[7] Furthermore, in contrast with pretrial relief, a defendant seeking relief for a speedy trial right violation after conviction must demonstrate prejudice as a result of the delay. (*People v. Clark* (2016) 63 Cal.4th 522, 552 (*Clark*); *People v. Lomax* (2010) 49 Cal.4th 530, 556–557 (*Lomax*).) Defendant fails to do so, which is fatal to his claim.

### 2. Analysis

#### a. Section 859b

"The state and federal Constitutions guarantee a defendant facing criminal charges the right to a speedy trial. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) This right protects an accused from facing an unduly lengthy period in which criminal charges are pending." (*People v. Hajjaj* (2010) 50 Cal.4th 1184, 1193, citing *People v. Lewis* (2001) 25 Cal.4th 610, 628–629 (*Hajjaj*).) Section 859b is "'supplementary to and a construction of the constitutional right to a speedy trial'" (*People v. Standish* (2006) 38 Cal.4th 858, 870; accord, *Favor*, *supra*, 59 Cal.App.5th at p. 989), and provides that "[b]oth the defendant and the people have the right to a preliminary examination at the earliest possible time" (§ 859b). The statute "'reflects a clear legislative intention to prevent prolonged incarceration prior to a preliminary hearing.'" (*People v. Standish*, *supra*, at p. 870.)

"To effectuate the right to a speedy preliminary hearing, section 859b contains two deadlines. [¶] First, the preliminary hearing 'shall be held within 10 court days' of the

---

[7] In *People v. Love*, the court stated that "the Legislature [has not] created a provision [in section 859b] for the withdrawal of properly entered waivers." (*People v. Love* (2005) 132 Cal.App.4th 276, 285.) We do not reach the issue of whether defendant's revocation of his general time waiver had the effect of restarting the 60-day clock under section 859b, as the People do not advance that argument and no prejudicial error resulted in any event.

arraignment. (§ 859b.) If the defendant is in custody, the charges must be dismissed if the hearing does not occur within that time, unless an exception applies. (*Ibid.*) The 10-day deadline has two exceptions. The defendant may 'personally waive[]' his right to an examination within 10 court days. (*Id.*, subd. (a).) Alternatively, the prosecution may 'establish[] good cause' for a continuance beyond that period. (*Id.*, subd. (b).)

"The second section 859b deadline is an outer limit of 60 days from the date of arraignment to hold the preliminary hearing. If the hearing 'is set or continued more than 60 days from the date of the arraignment,' the charges shall be dismissed. (§ 859b.) As to this deadline, there is only one exception: the defendant may 'personally waive[]' his or her right to a preliminary examination within the 60 days. (*Id.*, subd. (a).) In contrast to the 10-day deadline, the 60-day limit contains no good cause exception. The 60-day limit protects the right to a speedy preliminary hearing by ensuring that, even with good cause, the hearing may not be continued indefinitely. [Citation.] It also ensures that criminal cases are moved expeditiously through the courts." (*Favor*, *supra*, 59 Cal.App.5th at pp. 989–990, fn. omitted; accord, *People v. Superior Court* (*Arnold*) (2021) 59 Cal.App.5th 923, 932 (*Arnold*); *People v. Figueroa* (2017) 11 Cal.App.5th 665, 673–675 (*Figueroa*).)

### b. Statutory Deadline Must Yield to Constitutional Right to Effective Assistance of Counsel

Notwithstanding the People's contrary argument, courts have repeatedly held that "[t]he 60-day rule … 'contains no good-cause exception.'" (*Favor*, *supra*, 59 Cal. App.5th at p. 992 [recognizing that impossibility might excuse compliance with 60-day deadline]; accord, *Arnold*, *supra*, 59 Cal.App.5th at pp. 940–941; *Lacayo v. Superior Court* (2020) 56 Cal.App.5th 396, 399–400 (*Lacayo*); *Ramos v. Superior Court* (2007) 146 Cal.App.4th 719, 731 (*Ramos*).) However, relevant here, courts have on occasion recognized a limited exception to the statutory time constraints under section 859b where "'constitutional principles and principles affecting the administration of justice'" are at

10.

play.  (*People v. Lind* (2014) 230 Cal.App.4th 709, 714 [a defendant may not divest the trial court of jurisdiction and then complain his preliminary hearing was not held within 60 days] (*Lind*); accord, *Kowalski*, *supra*, 196 Cal.App.3d at p. 179 [constitutional right to counsel prevails over right to preliminary hearing within 10 days]; *Curry v. Superior Court* (1977) 75 Cal.App.3d 221, 225–226 [right to self-representation prevails over right to preliminary hearing within 10 days] (*Curry*); cf. *Arnold*, *supra*, at p. 941 [distinguishing *Lind* on ground that motion to disqualify prosecutor's office, pending for more than one year, did not divest trial court of jurisdiction and, therefore, did not toll statutory 60-day deadline after the defendants declined to waive time any further].)  We find the decision in *Kowalski* instructive and conclude the principle it articulates applies here where the slight delay at issue was the direct result of the conflict between defendant's right to a speedy preliminary hearing and his constitutional right to counsel.

The Sixth Amendment of the United States Constitution guarantees criminal defendants both the right to self-representation (*People v. Johnson* (2012) 53 Cal.4th 519, 525–526, citing *Faretta*, *supra*, 422 U.S. 806), and, along with article I, section 15 of the California Constitution, the right to effective assistance of counsel free from conflicts of interest (*People v. O'Malley* (2016) 62 Cal.4th 944, 1001, citing *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 309).  During the course of this case, defendant represented himself at times and he was represented by counsel at other times.  Between his revocation of his general time waiver on October 28, 2015, and the first appearance by Mr. Renge on December 14, 2015, defendant was represented by at least six attorneys, including Mr. Renge; and during the preliminary hearing, defendant moved for the appointment of yet another new attorney.  Unsuccessful in that regard, he then moved to represent himself pursuant to *Faretta*.  At the time, defendant was charged with 38 felony counts and in addition to his existing file, Mr. Renge represented that defendant wanted him to review 4,500 pages of phone records.

11.

The trial court recognized the conflict between defendant's right to a speedy preliminary hearing and his right to effective assistance of counsel, as did Mr. Renge, who expressed his unwillingness to render ineffective assistance of counsel by proceeding with the preliminary hearing without adequate time to prepare. Thus, "'[the] trial court was confronted with the difficult problem of procedurally navigating this case to avoid the Scylla of delay and the Charybdis of ineffective and inadequate representation.'" (*Kowalski*, *supra*, 196 Cal.App.3d at pp. 178–179, quoting *People v. Powell* (1974) 40 Cal.App.3d 107, 148.)

As explained in *Kowalski*, "[d]efendant has the right to effective assistance of counsel at his preliminary hearing, this being a 'critical stage' of the proceedings. [Citation.] And counsel must actually be prepared and effective. [Citation.] Defendant also has a right to a speedy trial and section 859b implements this right. [Citation.] If the time period is violated the information must be dismissed. [Citation.] However, defendant's statutory rights are '"merely supplementary to and a construction of the Constitution. [Citations.]" They do not carry the force of weight of constitutionally mandated imperatives'" and must yield in a conflict between the two. (*Kowalski*, *supra*, 196, Cal.App.3d at p. 179; accord, *Curry*, *supra*, 75 Cal.App.3d at p. 226; see *Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 961 [statute yields to Constitution in a conflict].)

"'"[A] criminal defendant may not juggle his constitutional rights in an attempt to evade prosecution. He may not demand a speedy trial and demand adequate representation, and, by the simple expedient of refusing to cooperate with his attorney, force a trial court to choose between the two demands, in the hope that a reviewing court will find that the trial court has made the wrong choice."'" (*Kowalski*, *supra*, 196 Cal.App.3d at p. 181, quoting *People v. Johnson* (1980) 26 Cal.3d 557, 570, fn. 13.) "The result would be … ludicrous if [a] defendant could play his right to effective assistance of counsel against his statutory right to a preliminary hearing .… Furthermore, a more serious violation of [a] defendant's rights would result if [the] defendant had a

12.

preliminary hearing [within the statutory deadline,] but failed to have effective representation at that hearing." (*Kowalski*, *supra*, at pp. 179–180.)

Thus, where, as here, the two rights conflict, the statutory deadline set in section 859b must be subordinated to the constitutional right to effective assistance of counsel. (*Kowalski*, *supra*, 196 Cal.App.3d at p. 179; accord, *Curry*, *supra*, 75 Cal.App.3d at p. 226 ["[S]ection 859b must … be subordinated to the constitutional right of self-representation."]; see *Lind*, *supra*, 230 Cal.App.4th at p. 715 ["A defendant's constitutional right to a speedy preliminary hearing is not infringed by the suspension of the 60-day rule for the time it takes to resolve that defendant's challenge to the impartiality of the judge assigned to his or her case."].) We observe that *Kowalski* confronted the failure to hold a preliminary hearing within 10 days while we confront the 60-day deadline. However, the parties neither addressed the rule in *Kowalski* nor advanced any arguments that suggest the principle underlying the decision in *Kowalski* is inapplicable to the facts of this case.

Mr. Renge accepted appointment in this case and made his first appearance on December 14, 2015. Due to the recency of his appointment, the number of felony counts, and the need to review more than "the bare bones police reports" in a very serious child molestation case that exposed defendant to indeterminate life terms, Mr. Renge needed time to prepare so as to render *effective* assistance of counsel. Accepting that the timeout date was December 28, 2015, defendant's preliminary hearing commenced on January 14, 2016, only one month after Mr. Renge accepted the appointment and approximately two weeks after the timeout date. Thus, the delay in this case was minimal and was tethered to providing Mr. Renge a brief period of time to prepare for the hearing.

As in *Kowalski*, "counsel was not attempting to postpone the hearing indefinitely," and "[n]othing in the record suggests he was being 'lazy or indifferent.'" To the contrary, "he was 'pursuing his client's best interests in a competent manner.'"

13.

(*Kowalski*, *supra*, 196 Cal.App.3d at p. 181.) Further, the short delay was not attributable to stalling by the prosecution or scheduling issues with the trial court. (*Ibid.*)

Accordingly, we reject defendant's claim that the trial court erred by failing to hold his preliminary hearing within 60 days following the withdrawal of his general time waiver. (*People v. Brooks* (2017) 3 Cal.5th 1, 39 [we review ruling, not reasoning]; *Figueroa*, *supra*, 11 Cal.App.5th at p. 673 [we examine ruling to determine if it was erroneous as matter of law].) We express no view on what the outer limits of the application of this principle might be. The inquiry is necessarily fact specific and it suffices to reiterate that the delay at issue here was only two weeks, approximately, and was attributable to newly appointed counsel's need to prepare in a very serious, multiple-count felony case.

### c.    No Prejudice

We also conclude that defendant has not shown prejudice. He argues that a violation of the 60-day deadline under section 859b entitles him to relief without any showing of prejudice and he asserts the People's reliance on *Clark* is misplaced. However, *Ramos* and *Figueroa*, cited by defendant for the proposition that prejudice is not required to obtain relief, are inapposite.

In *Ramos*, the defendant filed a petition for a writ of mandate compelling dismissal of the amended complaint against her and although the Court of Appeal dismissed the petition as moot given the defendant's subsequent entry of a time waiver, it stated that the superior court should have granted the defendant's petition for dismissal under section 859b and no prejudice analysis was required. (*Ramos*, *supra*, 146 Cal.App.4th at pp. 737–738.) In *Figueroa*, the People challenged the trial court's dismissal of the complaint under section 859b for failure to hold a preliminary hearing within 60 days and the appellate court affirmed. (*Figueroa*, *supra*, 11 Cal.App.5th at p. 670.) Thus, neither decision cited by defendant concerned a challenge under section 859b to a posttrial judgment. (See e.g., *Favor*, *supra*, 59 Cal.App.5th at pp. 987–988 [granting the

14.

defendant's petition for writ mandating dismissal of complaint for violation of 60-day rule under § 859b]; *Arnold*, *supra*, 59 Cal.App.5th at p. 927 [denying People's petition for writ of mandate compelling superior court to vacate order dismissing complaints against the defendants for violation of § 859b's 60-day rule]; *Lacayo*, *supra*, 56 Cal.App.5th at p. 397 [granting writ of mandate and directing trial court to set aside information].)

Under the California Constitution, defendant is not entitled to have judgment set aside absent a showing "that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) The California Supreme Court has explained that "[a]lthough a defendant seeking pretrial relief for a speedy trial violation is not required to make an affirmative showing of prejudice [citation], the situation is different after judgment. [Citations.] 'Upon appellate review following conviction, … a defendant who seeks to predicate reversal of a conviction upon denial of his right to speedy trial must show that the delay caused prejudice: this court, in reviewing the judgment of conviction, must "weigh the effect of the delay in bringing defendant to trial or the fairness of the subsequent trial itself."'" (*Lomax*, *supra*, 49 Cal.4th at p. 557, quoting *People v. Johnson*, *supra*, 26 Cal.3d at p. 574.)

This was the point subsequently made by the California Supreme Court in *Clark* in the context of section 859b. (*Clark*, *supra*, 63 Cal.4th at p. 552.) While here, in contrast with the defendant in *Clark*, defendant objected in the trial court and sought dismissal, he did not pursue mandamus relief and the issue is before us on appeal following conviction rather than on a pretrial writ. (*Ibid.*; see *People v. Wilson* (1963) 60 Cal.2d 139, 149 [proper remedy for enforcing speedy trial rights is petition for writ of mandate prior to trial].) Thus, even if we assume error occurred, defendant's claim fails on the alternate ground that he has not demonstrated the error resulted in a miscarriage of justice.

### B. Trial

#### 1. Procedural Background

Following the preliminary hearing, the information was filed on January 26, 2016. Defendant, proceeding in pro. per, waived time and after several continuances at his request, he waived formal arraignment, pled not guilty and entered a general time waiver on March 25, 2016.

More than one year later, on June 9, 2017, defendant, again proceeding in pro. per, withdrew his time waiver, invoked his speedy trial rights and requested the appointment of counsel. The trial court again appointed Mr. Bijev to represent defendant. Trial had previously been set for August 31, 2017, and there was a discussion, left unresolved, regarding whether the 60-day clock began running from the withdrawal of the time waiver or from the present trial date.

On June 14, 2017, Mr. Bijev moved to withdraw from the case due to preexisting travel plans that interfered with his ability to proceed with trial prior to a timeout date of August 8, 2017, and defendant's unwillingness to waive time. The court discussed defendant's competing constitutional rights to a speedy trial and effective assistance of counsel with him, relieved Mr. Bijev, and set a tentative trial date of July 27, 2017. On June 15, 2017, the court appointed Mr. Beshwate, conditionally pending a conflicts check, but on June 20, 2017, Mr. Beshwate notified the court he was unable to accept appointment.

The court then appointed Mr. Kharazi to represent defendant on June 21, 2017, and tentatively set the trial date for September 7, 2017, which was beyond what the court and prosecutor by then agreed was the timeout date of August 8, 2017. However, the court found that the short delay was reasonable given the need to balance defendant's right to a speedy trial with his right to effective assistance of counsel. Jury trial thereafter commenced on September 7, 2017, with Mr. Kharazi representing defendant.

16.

On appeal, defendant claims that the trial court abused its discretion when it found good cause to extend the trial date beyond the 60-day timeout date under section 1382. The People argue there was no error and no prejudice to defendant.

### 2. Analysis

"In California, one of the principal statutes implementing the constitutional right to a speedy trial is section 1382." (*Hajjaj*, *supra*, 50 Cal.4th at p. 1193.) Pertinent here, section 1382 provides that, unless good cause is shown, an action shall be dismissed if "a defendant is not brought to trial within 60 days of the defendant's arraignment on an indictment or information .…" (§ 1382, subd. (a)(2).) An exception exists if the defendant enters a general time waiver, but "[i]f the defendant, after proper notice to all parties, later withdraws, in open court, his or her waiver in the superior court, the defendant shall be brought to trial within 60 days of the date of that withdrawal." (*Id.*, subd. (a)(2)(A).)

The California Supreme Court has recognized that "section 1382 does not define good cause, 'but numerous California appellate decisions that have reviewed good-cause determinations under this statute demonstrate that, in general, a number of factors are relevant to a determination of good cause: (1) the nature and strength of the justification for the delay, (2) the duration of the delay, and (3) the prejudice to either the defendant or the prosecution that is likely to result from the delay. [Citations.] Past decisions further establish that in making its good-cause determination, a trial court must consider all of the relevant circumstances of the particular case, "applying principles of common sense to the totality of circumstances .…" [Citations.] The cases recognize that, as a general matter, a trial court "has broad discretion to determine whether good cause exists to grant a continuance of the trial" [citation], and that, in reviewing a trial court's good-cause determination, an appellate court applies an "abuse of discretion" standard. [Citations.]'" (*Hajjaj*, *supra*, 50 Cal.4th at pp. 1197–1198, quoting *People v. Sutton* (2010) 48 Cal.4th 533, 546.)

"Good cause within the meaning of section 1382 exists, for example, when the delay beyond the statutory period is caused by the conduct of the defendant or occurs for his or her benefit, or there are unforeseen circumstances such as unexpected illness, unanticipated unavailability of counsel, or the absence of a witness despite due diligence to secure his or her attendance." (*Hajjaj*, *supra*, 50 Cal.4th at p. 1198.)

In this case, defendant revoked his time waiver on June 9, 2017, and requested the appointment of counsel. After appointing and relieving two attorneys, the trial court appointed Mr. Kharazi on June 21, 2017, and determined the 60-day timeout date was August 8, 2017. Over defendant's objection, the court found good cause to set trial for September 7, 2017, in view of Mr. Kharazi's need to prepare and defendant's competing right to effective representation.

A trial court abuses its discretion when it acts ""'"in an arbitrary, capricious, or patently absurd manner that result[s] in a manifest miscarriage of justice."'"" (*People v. Jones* (2013) 57 Cal.4th 899, 924, quoting *People v. Hovarter* (2008) 44 Cal.4th 983, 1004.) "If counsel seeks reasonable time to prepare a defendant's case, and the delay is for defendant's benefit, a continuance over the defendant's objection is justified." (*Lomax*, *supra*, 49 Cal.4th at p. 556.) As previously discussed, this was a serious multi-felony case that exposed defendant to the possibility of spending the rest of his life in prison, Mr. Kharazi was newly appointed, and the trial date was set only one month beyond the 60-day timeout date. Under these circumstances, the trial court did not abuse its discretion. Moreover, defendant fails to show he suffered any prejudice as a result of the one-month delay, which is also fatal to his claim. (*Id.* at pp. 556–557.)

## II.    Substantial Evidence Challenge to Count 5 and Counts 17–34

### A.    Standard of Review

"The Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense" (*Carella v. California* (1989) 491 U.S. 263, 265,

18.

citing *In re Winship* (1970) 397 U.S. 358, 364), and the verdict must be supported by substantial evidence (*People v. Zamudio* (2008) 43 Cal.4th 327, 357).  On appeal, the relevant inquiry governing a challenge to the sufficiency of the evidence "'is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055.)  "The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  (*People v. Zamudio*, *supra*, at p. 357.)

"In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence."  (*People v. Zamudio*, *supra*, 43 Cal.4th at p. 357.)  "'[I]t is the jury, not the appellate court which must be convinced of the defendant's guilt ....'"  (*People v. Nguyen*, *supra*, 61 Cal.4th at pp. 1055–1056.)  "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict."  (*People v. Zamudio*, *supra*, at p. 357.)

### B.    Analysis

#### 1.    Count 5

Count 5, forcible oral copulation, was based on a video clip filmed on or around April 2, 2010, when S.M. was 15 years old.  (Former § 288a, subd. (c)(2)(C).)  Defendant claims the count is unsupported by substantial evidence of oral copulation.  In their opening brief, the People argued that the evidence supporting the charge is not limited to the video clip.  However, the testimony identified by the People as relevant pertained to events that occurred when S.M. was 13 years old.

We reviewed the record and found neither testimony describing what occurred in the relevant video clip nor other testimony that would support the charged offense.  In the

19.

transcript of the video clip, the subject matter of defendant's and S.M.'s conversation supports defendant's claim that S.M. was engaged in masturbating his penis in the video. We provided the People with an opportunity to file supplemental briefing on the issue, and, after viewing the relevant video clip, they concede the video depicts masturbation rather than oral copulation. (Gov. Code, § 68081.) We accept the People's concession on this issue and we reverse defendant's conviction on count 5 for insufficient evidence.

### 2. Counts 17–34

Next, defendant was charged in counts 17–34 with committing oral copulation, rape, sexual penetration, and attempted sodomy on a victim who "is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused .…" (Former § 288a, subd. (i), §§ 261, subd. (a)(3), 289, subd. (e), 664/286, subd. (i).) Courts have interpreted this language to mean "the victim [is] 'not capable of giving legal consent because of intoxication'" from the substance or substances in question. (*People v. Lujano* (2017) 15 Cal.App.5th 187, 193; accord, *People v. Giardino* (2000) 82 Cal.App.4th 454, 462.) The law does not require a level of intoxication so great that the victim is "physically incapable of either speaking or otherwise manifesting a refusal to give actual consent." (*People v. Giardino*, *supra*, at p. 464.) Rather, the law "requires only that the level of intoxication be such that the victim is incapable of exercising the judgment required to decide whether to consent .…" (*Ibid.*)

The relevant acts, all based on separate video clips, occurred between January 6, 2011, and January 28, 2012, when S.M. was 16 and 17 years old. S.M. testified that when she was 14 or 15 years old, defendant began making her drink alcohol with a black powdery substance in it and the next day, she was unable to remember what had occurred. Defendant also made S.M. eat chocolate covered strawberries, which made her feel dizzy and faint; and he told her the strawberries would make her pass out and the alcohol would keep her awake. S.M. testified that every time she drank the "beverage"

20.

defendant provided her, she had complete memory loss and did not remember events that occurred; she did not remember being videotaped engaging in sex acts other than the one time she woke up in the middle of it (the T-shirt incident); and she consumed an intoxicant every time she saw defendant from the age of 15 on.

Although defendant characterizes this testimony as "generic," it was not speculative or vague and it was specific to the time period during which the crimes in counts 17–34 were filmed. "'[U]nless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support the conviction'" (*People v. Ghobrial* (2018) 5 Cal.5th 250, 281), and S.M.'s testimony that she was given the intoxicant every time and it caused complete memory loss constitutes substantial evidence in support of the jury's findings that defendant committed the offenses in counts 17–34 by means of an intoxicant. The video clips where Detective Renfro either did not comment on any signs of intoxication or stated there was nothing notable about S.M.'s demeanor are not sufficient, by themselves, to support intoxication as to those counts. However, the video clips depicting the sexual acts charged *and* S.M.'s testimony are sufficient, together, to support the jury's findings that on counts 17–34, S.M.'s "level of intoxication [was] such that [she was] incapable of exercising the judgment required to decide whether to consent .…" (*People v. Giardino*, *supra*, 82 Cal.App.4th at p. 464.) Therefore, we reject defendant's substantial evidence challenge to counts 17–34.

## III. Detective Renfro's Testimony on Intoxication

### A. Legal Standard

Pursuant to Evidence Code sections 702 and 800, a lay witness must have personal knowledge of the matter on which he is testifying, and opinion testimony is limited to that which is rationally based on the witness's perception and is helpful to a clear understanding of the testimony. (*People v. DeHoyos* (2013) 57 Cal.4th 79, 130.) In contrast, "[m]atters that go beyond common experience and require particular scientific

knowledge may not properly be the subject of lay opinion testimony." (*Id.* at p. 131.) A witness qualified as an expert is required in those instances. (Evid. Code, § 801; *People v. DeHoyos*, *supra*, at p. 131.) We review a trial court's ruling on the admission or exclusion of evidence for abuse of discretion. (*People v. Sanchez* (2016) 63 Cal.4th 411, 456; *People v. DeHoyos*, *supra*, at p. 131.)

### B. No Error

Defendant claims that the trial court erred in permitting Detective Renfro to testify in an expert capacity that S.M. appeared intoxicated in some of the videos and that to the extent Renfro testified as a lay witness, his testimony was "unnecessary and 'wholly without value.'" (Citing *People v. Vang* (2011) 52 Cal.4th 1038, 1048 & *People v. Killebrew* (2002) 103 Cal.App.4th 644, 651.) The People contend that the trial court acted within its discretion in allowing Renfro, as a lay witness, to highlight certain aspects of the videos relevant to the charges but, in any event, any error was harmless.

"'[T]he question of whether a person was intoxicated is not necessarily a matter of expert testimony, as any layman can give his opinion based upon his own observation.'" (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1308, italics omitted, citing *People v. Williams* (1988) 44 Cal.3d 883, 914 & quoting *People v. Ravey* (1954) 122 Cal.App.2d 699, 703.) Here, Renfro testified that S.M. *appeared* intoxicated in some of the videos because, in contrast with earlier videos, her speech was slurred, she was speaking in incomplete sentences or making noises rather than talking, she was lethargic, and "[s]he appeared to be out of it." However, he did not testify in the capacity of an expert witness and the trial court did not instruct the jury on expert witness testimony. Therefore, we reject defendant's unsupported assertion that "it was inevitable the jury would have viewed Renfro [as an expert]."

We also reject defendant's contention that Renfro's lay testimony was of no value in aiding the jury. Evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."

(Evid. Code, § 210.)  The jury was tasked with evaluating 35 felony counts, all based on sex crimes defendant allegedly committed against his minor daughter over a six-year period.  Of the 35 counts, 30 were based on graphic videos of the criminal acts; and of those 30 videos, 18 pertained to crimes by means of intoxication.

The video clips were admitted into evidence and viewed by the jury during Renfro's testimony, which occurred prior to S.M.'s testimony; and, within the context of a difficult, emotional case, Renfro's testimony regarding signs of intoxication aided the jury in evaluating S.M.'s demeanor in a select number of video clips.  Renfro did not offer an opinion on the extent of any intoxication or conclude that S.M. was intoxicated.  The trial court is afforded broad discretion in the admission or exclusion of evidence (*People v. Fayed* (2020) 9 Cal.5th 147, 189), and under these circumstances, we discern no error in the admission of Renfro's testimony (*People v. Chatman* (2006) 38 Cal.4th 344, 397 ["Generally, a lay witness may not give an opinion about another's state of mind.  However, a witness may testify about objective behavior and describe behavior as being consistent with a state of mind."]; *People v. Son* (2020) 56 Cal.App.5th 689, 696–698 [detective's testimony highlighting what she saw in video was not opinion testimony, it aided jury, and it was not prejudicial]).

### C.    No Prejudice

In addition, even if we assume error, it was harmless.  State law errors are reviewed under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 837, which requires a determination "whether there is a 'reasonable probability' that a result more favorable to the defendant would have occurred absent the error."  (*People v. Aranda* (2012) 55 Cal.4th 342, 354.)  Renfro did not offer an opinion on signs of intoxication for every relevant video; for some videos, he did not comment at all on that aspect and for others, he testified there was nothing notable about S.M.'s demeanor.  The most compelling evidence of intoxication was S.M.'s testimony and because her

23.

testimony was the only evidence supporting intoxication for some of the charged offenses, the jury necessarily credited it.

We are not persuaded otherwise by defendant's contention that the jury was misled when the prosecutor, in formulating a question to Renfro, loosely referred to S.M. appearing intoxicated in "the last 10 or 15 or so" of the videos shown or when the prosecutor, during closing argument, drew the jury's attention to Renfro's testimony. Defendant does not claim prosecutorial error; the prosecutor highlighted S.M.'s testimony during the same argument portions; the jury was instructed that the attorneys' questions and arguments are not evidence, pursuant to CALCRIM Nos. 200 and 222; and "[w]e presume the jury followed the trial court's instruction absent evidence to the contrary." (*People v. Fayed*, *supra*, 9 Cal.5th at p. 192.)

## IV. *Dueñas* Claim

Finally, defendant challenges the imposition of fines, fees and assessments without a determination on his ability to pay, in accordance with the decision in *Dueñas*. However, as previously set forth, the trial court imposed a maximum restitution fine of $10,000 under section 1202.4, subdivision (b)(1). Defendant had a statutory right to object to the restitution fine when it was imposed, based on inability to pay, but he did not do so. (§ 1202.4, subds. (c), (d).) Accordingly, he forfeited appellate review of his claim that the trial court erred in imposing the fines and court assessments without determining his ability to pay. (*People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1033–1035; *People v. Taylor* (2019) 43 Cal.App.5th 390, 399–400; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153–1154.) We recognize that the imposition of court operations and facilities assessments under Penal Code section 1465.8 and Government Code section 70373 is statutorily mandated irrespective of ability to pay, but we agree with the Court of Appeal in *People v. Gutierrez* that "[a]s a practical matter, if [defendant] chose not to object to a $10,000 restitution fine based on an inability to pay, he surely would not complain on

similar grounds regarding an additional $[2,380] in fees." (*People v. Gutierrez*, *supra*, at p. 1033; accord, *People v. Montelongo*, *supra*, at pp. 1034–1035.)

## DISPOSITION

Defendant's conviction on count 5 for violation of former section 288a, subdivision (c)(2)(C), is reversed for insufficient evidence, which reduces defendant's total determinate term to 151 years in prison. In addition, the judgment is modified to reflect imposition of a total court operations assessment of $1,360 under Penal Code section 1465.8 and a total court facilities assessment of $1,020 under Government Code section 70373. The trial court shall issue an amended abstract of judgment reflecting reversal of count 5; imposition of a total court operations assessment of $1,360 under Penal Code section 1465.8, a total court facilities assessment of $1,020 under Government Code section 70373, and a fine of $300 under Penal Code section 290.3; and imposition of the middle term of eight years on counts 6–16. The trial court shall forward a certified copy of the amended abstract of judgment to the appropriate authorities. The judgment is otherwise affirmed.

MEEHAN, J.

WE CONCUR:

HILL, P.J.

POOCHIGIAN, J.

25.